Good morning. I'm Shakti Murthy appearing on behalf of Mr. Maggit. This Court's holding in Menifee was that because of the centrality of the right to counsel, we will not deny a defendant that right during a critical stage of the prosecution. And that seems to clearly apply to this case. In fact, this seems like a pretty open and shut case because it was a critical stage of the prosecution and the defendant didn't understand what was going on and asked for counsel. And so, you know, just reading through the State Court transcripts, you have a feeling of someone that really didn't know what was going on. Well, he knew. I mean, this isn't just a case of a defendant who didn't know what was going on. He'd been advised when he made his Marsden motion that he risked all of this and he got himself to a situation where he had to make, on the eve of trial, a decision whether or not to counsel. Is there any argument that he wasn't advised that he would risk these kinds of disabilities because he wasn't a lawyer and he was going to have to make critical decisions like that? Was it so clear to the Court that when one of these tough decisions came up that he was reappointed now? Your Honor is correct, Judge Fischer, that the Court certainly did a good job of advising him as to the issues that come up with the appropriate representation. The Court did leave the door open in the sense of stating that, you know, the closer we get, the less likely I'm going to be to reappoint for you. I think that that language is there in my brief. And then we're kind of, in that sense, in the smaller sense, smaller picture, that the Court did a reasonable job, but the bigger picture is the constitutional issue. Okay, go ahead. I'm pretty sure what you're going to say. I'm sorry. I'm pretty much finished. Here's the problem I have. The Supreme Court, for good or for bad, has said that there's a If you don't exercise that right, which is probably a bad idea, you have to be told that this is a bad idea, that this is complicated, that there are all kinds of problems, that the Constitution guarantees you counsel to help you with all of this, and you nevertheless do that. Now, if that What do we then have to just automatically say, okay, he can change his mind any time, even after he has been warned about all these things? Well, it seems like this Court's precedent would say yes, because in Menifeld, he had also been warned, and what this Court talked about in that case was the centrality of the right to counsel, because the whole proceedings are suspect if you've got someone that doesn't know what they're doing up there, which is pretty much the case. And Menifeld was after the trial. Yeah. I mean, we also have authority that says when you're right on the eve of trial, there's a different dynamic going on, and this was within a week of trial. He'd been granted a continuance when he self-represented, and Menifeld and, was it Robinson, the other case, are both post-trial. Now there's been a break in the proceedings. You don't have a jury being called in. You don't have witnesses lined up. Now you're in the aftermath. Now it's just the lawyers arguing about how long the person's going to be sentenced for. So there's a circumstantial difference, and we're trying to, well, we have to determine here, and what I'm wrestling with, I'm not saying this is an easy case, is, was it clearly established at this time so that this trial court in the state would have known that when he asked for a standby counsel and then makes the somewhat cryptic remark, is it too late for a lawyer, that this triggers a full-blown constitutional issue that the judge is suddenly, in light of the language of Ferretta itself, saying, you know, if you make this decision, you're going to get stuck with some bad outcomes, perhaps, that suddenly it's clearly established law at this time, before even any of our cases have come down on it, that this trial court judge, who was, I think, bending over backwards to try and help the guy out, saying, look, this is a pretty good plea, in any event, that we should say there's a constitutional, clear constitutional violation that meets our EDPA, the EDPA constraints. I would answer that in two different parts. I know it's a lengthy, you know, I've been listening to the Alito here, and so I'm, you know, enough about me. It's a good question, Judge Fischer, and I would start out by saying that battlefields is not in any way restricted to a particular stage. It just talks about critical stages. Well, I didn't mean to mislead you on that. I understand. But it factually is, and it's factually relevant to know when in the proceedings, chronologically, the request comes. I mean, that's part of the jurisprudence. Right. If it's on the eve of trial and it's for purposes of delay and manipulation and there's prejudice to the system, that's weighed in the balance to evaluate the Sixth Amendment right to counsel, isn't that right? Exactly. If the trial court or any court had found that Mr. Madden had made this request for the purposes of delay, then clearly, under Mennefield, it would be all right for the judge to say, you know, you're doing this for the purposes of delay, we can't grant it. But there's nothing like that happening. It's more like the idea here, which you find in the district court's words, too, is that once you exercise your fret or right, it's just set in stone. And even if you don't know what's going on and the proceedings are just a mess and you're spending nine years in prison because you don't have any clue about what's happening, then it's just too late. And that's really not the law. Well, it's too late. I take your point. But I'm not sure. Unfortunately, we don't really know. There's not much record here what the judge meant. But when he asked, Mr. Maggott asked, is it too late for a lawyer? And the judge says it's too late. Too late might well have meant in the judge's thinking, you know, we're a week from trial here. I can't let you do this. It's not just because it's cast in stone, but there are lots of reasons. So on this record, do you think there's enough for us to say under these circumstances there was a clearly established constitutional right that demanded that the judge do what? That he actually grant reappointment or that he should have done more in finding out why a right to counsel might be appropriate at that point? I would say on this record, unless there's a finding that the request was made for the purposes of delay, under this Court's case law, you just have to reappoint. And to go into the bigger picture, the reason for that and the reason that Mennefield makes perfect sense is we're talking about the integrity of the proceeding. We're talking about, you know, whether the facts are actually being found properly, whether we can rely on the proceeding. I mean, the right to counsel is real central. So unless someone's up there and they're trying to delay the proceedings or mess with the Court in some way, you pretty much are going to have to reappoint. Well, this would always delay the proceedings, wouldn't it? Well, it's the purpose if the intent is to delay. And here there's absolutely nothing in the record, nothing in the government's brief, nothing in anything the Court said that said where the Court said, look, you're making this request to delay. There's no concept that he made the request to delay. Whether it actually delayed, it's always going to actually delay. Well, what is the principle that you want us to enunciate here? Okay. I would just set it out real quickly, and then I'm going to try to reserve at least 30 seconds of a rebuttal. Wait a minute. But just try to write our opinion for us. Okay. I would say it's different than any other case where, as you go down the line, he says, oh, I think I want somebody here to help me. Okay. I would sort of assert the principle as follows. Menefield has stated that you must reappoint if it is, A, a critical stage. You must. And the only way to not reappoint is if the defendant's reason for making the request is to delay. Not the outcome delay, but the reason is to delay if the Court finds that. And the overall reason for this is that you just cannot trust that the proceeding has been decent if you've got someone that doesn't even probably have a high school degree who's trying to represent themselves. And so it just really goes to the integrity of the whole legal system. Okay. So if the district court or the court here had said, the trial court had said, I find that you're doing this for reasons of delay. Different case. I'm going to reserve the rebuttal. Okay. Thank you. We'll give you a minute on the phone. May it please the Court. David Glassman for the government. I'd like to respond to some of the observations you were making, Judge Fischer, as well as your point, Judge Schroeder, and that is that if we are to look at what this case is about, it's our view it's a much narrower question than the question that has been posed to the Court. In other words, this case really is not about the question in the abstract as to whether or not there would be a defendant under certain circumstances would be entitled to the reappointment of counsel. Okay. There may very well be circumstances where the defendant would be entitled to reappointment. And, for example, our position is not, as it is alleged in the reply brief, that we have somehow claimed that failure to reappoint counsel at a critical stage is not contrary to established federal law. That's not the point in this case because we never get to that point. The question is, what is the import of what occurred in that proceeding? And was there in that proceeding prior to the sentencing proceeding? So, for example, the post-trial cases cited do not apply, and they certainly don't control in the habeas corpus context. The question is, what is the significance of what happened there? Was that a request to reappoint counsel? We know it was not deemed a request to reappoint counsel by petitioners, lawyers, and state court, state appellate court, because no such claim was ever raised in state court. And we know that it wasn't a claim in the federal court because it wasn't raised as a claim in the federal petition, nor was it addressed as a claim by the district court. It's a claim that has been, I submit, it is a claim that's born in this appeal. And that is why I took the unusual step of myself filing like the excerpts in this case, because one need only review the record in this case to see that this claim was never raised, much less addressed by the state court. And that, as this Court is well aware, is the starting point in a habeas corpus appeal. Well, are you claiming that this, there was an ambiguous statement that could have been a request for a reappointment of counsel? One or that the trial judge was never confronted with a true question? The latter, Judge Goodwin. I, I, it is our position that the trial judge was never confronted with it, but that that such a claim, that is the claim that in fact the judge was confronted with such a request, that such a claim be presented either in state appeals or at the end, not either rather, both in state appeals and in the district court. You're not claiming that this wasn't a critical phase? No, Your Honor. That it's, that there was no explicit request for counsel? I am, I am contending the latter. There was no explicit request, but moreover. Well, no, let's step back because I appreciate the record being presented to us as it was in full measure. He had asked for appointment of standby counsel in that proceeding. Correct. All right. And he, and the judge said, I'm not inclined to give it to you. He didn't elaborate much on that. And then the defendant is struggling with this issue and the judge tries to help him out by saying, you know, invoking his own criminal law experience and so on, coming right up to the edge of giving legal advice to him and saying this, you're, you're confronted with this, take it or leave it. And here's some thoughts about, in effect, why it's maybe a good idea to take it. At which point, Maggott says, is it too late for a lawyer? Now, he's already been denied standby counsel. And the judge says, in effect, yes, it's too late, without going into any. The judge clearly appreciates the dilemma that's confronting the defendant. And the judge clearly knows that the defendant has asked for counsel to help him. He's asked for standby counsel. So why isn't that record sufficient to put any savvy trial judge, which this one clearly was, sensitive to Sixth Amendment issues, on notice that, and that's why I asked counsel for the defendant, what the rule is, is it that the judge should have, as she's arguing, automatically then, under these circumstances, reappointed or appointed counsel, or at the minimum, should have done more than he did, so that we would have a record, in which case the judge would have said, no, it's too late, because it would unduly delay the proceedings, or I'm finding that you're, you know, that you're playing games with me, or whatever and so on. We don't have that kind of record. I'm confused as to, in effect, what the trigger is here. It is not a blank slate because of the request for the advisory counsel, but it's clearly, as you say, not a direct confrontation on, quote, reappointment. So going back to the trial setting, what's your analysis of what was put on the table or not? Well, the consideration that I would add that the court did not list there is the prior waiver, the extent of the colloquy that already occurred between the court and the defendant. That is also a relevant consideration. But going directly to your point, then it seems to me the question is twofold. First of all, at this juncture, to decide that this is an explicit withdrawal, either an explicit withdrawal of the defendant's proper status, or sufficient, by some specific authority, to trigger some sort of new colloquy, that fails for two reasons. The first reason that it fails is that there is no authority that has been identified that would require that. And the cases that have been cited, the cases that have been cited on that point have nothing to do with that claim. Menefield is not that situation, this situation, nor is Ignacio v. Robinson, as I explained in my brief. And that finally, even if we had a scenario that was just as the court described one, we would still require, as a matter of appellate procedure and habeas corpus review, that this claim progress in the normal course of things. And I would submit that this claim, the claim that the court is identifying or anything close to it, has never been addressed by any court because it has never been raised. Well, I'm not sure we need to go there. Menefield was a situation where there was no possibility. It didn't involve, as I recall it, I was on the panel, that it didn't involve a question of revoking a previous waiver with respect to trial. Is that right? My recollection is that Menefield, like Ignacio, have to do with the question of law. Whether or not it's a critical stage to prepare a motion for new trial. Correct. At that point, there could have been no question of the revoking of the prior waiver. But the question in this case has to do with the interpretation of what is at best an ambiguous factual circumstance. Well, don't, do you really have to do that? Isn't the real, this is a habeas case? Correct. I mean, isn't, do you really have to go any farther than to say that the trial court, having conducted a full Ferretta colloquy with the defendant and having received a waiver, didn't violate any clearly established Federal law in saying a week before trial that it's too late to, you know, I'm not going to, we're not going to now go down a different road. You need not go any further than that. Nor, for that matter, do you need go any further than finding, if you are inclined to, to now, you know, breathe some, to take a closer look at that cryptic statement, which, as I've indicated, has never been alleged as an invocation in the prior. Suppose that he had said, I want, because we may not agree with you there. Okay. That's so cryptic. But suppose he had said, I, I, oh, I see. Now I want. Well, then, then two things, and I don't, I don't mean to belabor it. I wouldn't do well in those congressional hearings either. And that is two points. First, as, as the court has indicated, the question would be what Ferretta dictates, and Ferretta does not address it. But second, and I may be on an island here, the question would be, well, how have the predecessor courts before this court, in this case, evaluated this question? And my response is, they haven't, because it's never been raised here. Thank you very much. I'm just going to make a, just like a quick point here, because it seems to be like an overall picture, factually, that it's a little misleading, that this, these requests were made on the eve of trial, and that there were witnesses waiting and stuff. That's not really what was going on here. If you look at, at what was filed by a petitioner, he's talking about he didn't understand the plea, he, he, he was waiving his appeal rights and didn't understand that. I understand that. It was a week from trial, though. Trial, it says on the record, trial, we're ready to go to trial in a week. So I was positing a distinction between a post-trial situation and a pre-trial situation. How do you respond to the Attorney General's point that this, the, the so-called cryptic statement or the ambiguous possible request for counsel was not raised directly or indirectly in the exhaustion in the state court or in the district court? I, I withstand my, my arguments and my grief on that, because I pretty extensively cited the, the Supreme Court petition, and it, and it, it, it does exhaust them. It, it lays forth the Sixth Amendment, it lays forth all the facts. Well, it, it, it lays forth the critical stage and the, and the Sixth Amendment reasoning. But does it, does it translate this cryptic statement into a request for appointment of counsel? I would say as far as the proper stuff that I've seen, which is a lot, that actually, that one actually does a, does a pretty good job on that. I mean, it's not like a legal brief, of course, but that's what, that's why we're here, because, because Mr. Madgett really is a lawyer. Before we declare that a state court has violated clearly announced Supreme Court constitutional law, don't we have to find that a, a question was squarely presented to the court that it then answered incorrectly? Your Honor, I'm just going to stay with, with what I have in my brief on that, just only because I, I don't have much time left and I don't want to. We're, we're, we're taking your time. Can I just make one more point here? There's also actually on August 4th, 2000, which is in the government's supplemental excerpts of record at page 186, the defendant does ask for an attorney at sentencing, because he doesn't understand, and this is really at the heart of this, he doesn't understand the giving up of his appellate rights as part of the plea agreement. That's really what he, he, he's really complaining about. And that's not something that would necessarily have delayed anything. So he does make that, that request and he says, I don't understand my plea bargain. I don't understand that I'm giving up my appellate rights. The court says, you need to consult with an attorney and the defendant says, could I get an attorney? The court says, not at this point. So just, you know, he really doesn't know what's going on. He doesn't understand the plea. That's, that's really at the heart of it. Thank you. Okay. Case just argued is submitted. We'll hear the next case, which is Moon v. Barnhart.
judges: Schroeder, Goodwin, Fisher